**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ROBERT HANSON,

                Plaintiff,

                                      Case No. 3:14-cv-1132-J-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____/

**OPINION AND ORDER[1]**

**I. Status**

Robert Hanson ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of "[a]sthma," "hypertension and h[igh] b[lood] p[ressure]," "anxiety and panic attacks," "lower back problem and pain in low back 'rsd,'" "right leg, nerve problem, goes numb give[s] out in pain," "agoraphobia," "hi hernia," "siezures" (sic), "drepression" (sic), "arthritis r[ight] and l[eft] knee," "sleep apnea," "l[eft] shoulder has been replaced in 2004," and "pending shoulder replacement on r[ight] shoulder." See Transcript of Administrative Proceedings (Doc. No. 15; "Tr." or "administrative transcript"), filed December 17, 2014, at 227. (emphasis and capitalization omitted). On August 1, 2011, Plaintiff protectively filed an application for SSI, alleging an onset disability date of December 23, 2009. Tr. at 209-14, 222-36. Plaintiff's "protective filing date" is listed in the administrative transcript as June 10, 2011. Tr. at 15, 36, 129, 150,

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 14), filed December 17, 2014; Reference Order (Doc. No. 16), entered December 18, 2014.

152, 222. Plaintiff's application was denied initially, see Tr. at 129, 155-60, and was denied upon reconsideration, see Tr. at 150, 152, 161-65.[2]

On September 20, 2012, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff, a medical expert ("ME"), and a vocational expert ("VE") testified. Tr. at 34-91. At the time of the hearing, Plaintiff, who was represented by a non-attorney representative, was forty-eight (48) years old. Tr. at 36, 46. The ALJ issued a Decision on January 2, 2013, finding Plaintiff not disabled. Tr. at 15-26. The Appeals Council then received additional evidence in the form of a letter from Plaintiff's representative. See Tr. at 9-10; see also Tr. at 206-07 (representative's letter). On July 7, 2014, the Appeals Council denied Plaintiff's request for review, Tr. at 6-11, thereby making the ALJ's Decision the final decision of the Commissioner. On September 17, 2014, Plaintiff commenced this action under 42 U.S.C. § 405(g), as incorporated by 42 U.S.C. § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues generally that the ALJ's decision is not supported by substantial evidence. See generally Memorandum in Support of Complaint (Doc. No. 19; "Pl.'s Mem."), filed December 23, 2014. Plaintiff first contends that the "ALJ improperly changed the ability of the plaintiff to perform reaching from 'occasional' to 'frequent' in conflict with the testimony of the medical expert." Pl.'s Mem. at 6. Second, Plaintiff argues that "[t]his change is significant because it would alter the response from the VE . . . [because] a limitation of occasional reaching would eliminate all the jobs that were proffered by the VE[.]" Id. (emphasis omitted). Third, Plaintiff argues the ALJ's finding that Plaintiff is

---

[2] Plaintiff had a prior adverse ALJ decision dated December 22, 2009, that was affirmed by the Appeal's Council in February 2011. See Tr. at 39, 92-111, 112-16.

capable of frequent reaching is inconsistent with the other medical evidence of record. Id. at 6-7.  On April 6, 2015, Defendant responded to Plaintiff's arguments by filing a Memorandum in Support of the Commissioner's Decision (Doc. No. 20; "Def.'s Mem.").

After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds the ALJ's Decision is due to be affirmed for the reasons explained herein.

## II. The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 17-25.  At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since June 10, 2011, the application date." Tr. at 17 (emphasis and citation omitted).  At step two, the ALJ found Plaintiff suffers from "the following severe impairments: obesity, a seizure disorder, lumbago, controlled hypertension, right shoulder impairment degenerative joint disease,

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

status post arthroscopic surgeries, a major depressive disorder and a panic disorder without agoraphobia." Tr. at 17 (emphasis and citation omitted). At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." Tr. at 17 (emphasis and citation omitted).

The ALJ determined Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff can] lift and carry twenty pounds occasionally and ten pounds or less more frequently. He can sit, stand or walk for six hours each in an eight-hour workday, with reasonable and customary breaks. [Plaintiff] can occasionally push or pull or otherwise use arm and hand controls with the right arm and has no limitations with the left arm when using such arm or hand controls or with operating foot pedals or controls. He can never climb ladders, ropes or scaffolds and can occasionally climb ramps or stairs. [Plaintiff] can frequently perform all other postural activities, apart from only occasional crawling. He is totally precluded from reaching or working overhead and can frequently reach in all other directions. [Plaintiff] has no other manipulative limitations or no difficulties with seeing, speaking or hearing. He is unable to work at unprotected heights or in proximity to concentrated atmospheric pollutants, such as chemicals, dust, fumes, smoke, etc. [Plaintiff] can perform simple rote and repetitive tasks normally associated with unskilled kinds of work. He can occasionally interact with others such as the general public, coworkers and supervisors. [Plaintiff] is also unable to perform work requiring any strict production quotas or goals.

Tr. at 18-19 (emphasis omitted). At step four, the ALJ found Plaintiff "has no past relevant work." Tr. at 23 (emphasis and citation omitted). At step five, after considering Plaintiff's age (forty-seven (47) when he filed his SSI application), limited education, lack of work experience, and RFC, the ALJ relied on the testimony of the VE to find that "there are many unskilled jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 24 (emphasis and citation omitted), including "laundry sorter," "cleaner," "lens inserter," "document preparer," and "trimmer." Tr. at 24. The ALJ concluded that Plaintiff "has not been under a disability . . . since June 10, 2011, the date the Title XVI

application was filed." Tr. at 25 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV.  Discussion

Plaintiff contends the ALJ erred because his decision is not supported by substantial evidence. See generally Pl.'s Mem. at 6. Plaintiff first argues that the ALJ improperly rejected the ME's testimony that Plaintiff can only occasionally reach. Id. at 6-7. Second

Plaintiff challenges the hypothetical posed to the VE because it did not include the limitation for occasional reaching. Id. Third, Plaintiff argues that the ALJ cited no medical evidence to support his RFC determination regarding frequent reaching. Id. at 7-8. The first and third issues are addressed as they both relate to the medical evidence regarding Plaintiff's ability to reach.

**A. RFC determination supported by substantial evidence (issues one and three)**

Plaintiff contends the ALJ's RFC determination is flawed because it fails to account for Dr. Kendrick's (the ME) opinion that Plaintiff can only occasionally reach. Id. at 6-8. At the hearing, the ME testified, "[Plaintiff's] reaching in all directions would be limited to only occasional." Tr. at 42. Plaintiff argues that "Dr. Kendrick testified that he had read the entire exhibit file and took everything into consideration when he rendered his opinion." Pl.'s Mem. at 7. Plaintiff contends that the ALJ "[did] not discuss any other medical evidence that is contrary to Dr. Kendrick on this point - occasional reaching." Id. at 7. Plaintiff further argues the ME's opinion is consistent with other medical evidence of record including a "prior evaluation from the State Agency doctor from October 2008 indicat[ing] that the plaintiff was limited to occasional reaching and handling of the left upper extremity." Id.; see Tr. at 308-15 (October 2008 evaluation).

Defendant responds that the ALJ found the ME's opinion regarding Plaintiff's inability to perform overhead reaching with the right arm to be wholly consistent with Plaintiff's recent right shoulder x-rays. Def.'s Mem. at 4; see Tr. at 42 (ME's testimony); Tr. at 388, 534 (x-ray reports). As Defendant points out, however, the ALJ accorded little weight to the ME's conclusion that Plaintiff is limited to occasional reaching in all directions due to a lack of objective evidence supporting this limitation. Def.'s Mem. at 4; see Tr. at 21. As for the left

shoulder, Defendant argues there is no medical evidence during the pertinent time frame (from the December 23, 2009, date of onset through the date of decision) that supports any limitation of the left upper extremity. Def.'s Mem. at 6. Defendant submits that the State Agency doctor's opinion of October 2008 is irrelevant to the period under consideration, and in any event, the doctor stated her opinion was a "[c]urrent [e]valuation." Id. at 7; see Tr. at 308, 315. Defendant urges that the ALJ was not required to defer to the opinions of the non-examining ME. Rather, according to Defendant, the ALJ was required to give proper weight to the medical opinions of record, which Defendant argues the ALJ did here. Def.'s Mem. at 8.

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four of the sequential evaluation process to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, in making his RFC determination, the ALJ concluded, in relevant part, that the Plaintiff "is totally precluded from reaching or working overhead and can frequently reach in all other directions." Tr. at 19 (emphasis omitted). As defined by the Commissioner's regulations, "frequent" means "occurring from one-third to two-thirds of the time." See Social

Security Ruling 83–10, 1983 WL 31251 at *6 (SSA 1983). In his Decision, the ALJ summarized Plaintiff's testimony and the medical evidence. See Tr. at 19-23. Pertinent to Plaintiff's arguments, the ALJ stated as follows:

> [T]he medical expert, Dr. Kendrick, an orthopedist, testified that [Plaintiff] has a previous right shoulder dislocation, arthritis, low back pain, a seizure disorder, and obesity, with the ability to perform essentially the physical residual functional capacity stated above. The undersigned finds this opinion, presented after a full review of all of the available medical evidence of record, to be essentially consistent with the objective medical evidence of record, and gives it greater weight. However, although the medical expert's opinion that [Plaintiff] is unable to perform overhead reaching is fully consistent with [Plaintiff's] recent right shoulder x-rays, his opinion that [Plaintiff] can only occasionally reach in all directions is given little weight. Specifically, there is no objective evidence indicating that [Plaintiff] is precluded from using his right upper extremity other than doing so overhead and there is no evidence indicating his left upper extremity has any mobility issues.

Tr. at 21. In discussing the medical evidence, the ALJ stated that in a March 2010 exam, the Plaintiff "had full 5/5 strength bilaterally and a normal gait." Tr. at 20; see Tr. at 413-14; 461-462. He noted that Plaintiff underwent a right shoulder arthroscopic procedure on March 9, 2010, performed by Nigel Sparks, M.D. Tr. at 20; see Tr. at 355-57, and "five months following [Plaintiff's] right shoulder surgery, Dr. Sparks found [Plaintiff] was doing well with no paresthesias or episodes of instability." Tr. at 20. The record reveals, and the ALJ discussed, that Plaintiff was undergoing physical therapy. Tr. at 22; see Tr. at 322-53. The ALJ referenced the October 2010 exam findings that Plaintiff had full 5/5 strength in his right upper extremity. Tr. at 20 (referring to Tr. at 402). In an April 2011 exam, Roman E. Bautista, M.D., found Plaintiff had limited range of motion in his right shoulder but full 5/5 strength otherwise. Tr. at 20; see Tr. at 457. The ALJ discussed the May 13, 2011 exam by Anna Gajda, M.D. Tr. at 20. In that exam, Dr. Gajda noted Plaintiff had joint tenderness in both shoulders but full range of motion. Tr. at 509. In a September 2011 exam, Gathline

Etienne, M.D., noted Plaintiff had full 5/5 strength in his left arm. Tr. at 20-21; see Tr. at 531.[4]

According to the ALJ, on October 5, 2011, Dr. Sparks performed a "right shoulder humeral head resurfacing with arthro surface prosthesis[.]" Tr. at 21; see Tr. at 541-44. The ALJ noted that a right shoulder x-ray performed October 12, 2011 "showed no evidence of any hardware failing or loosening and there was continued narrowing of the inferior glenohumeral joint space with osteophytosis." Tr. at 21, 534.

In summarizing the medical evidence, the ALJ stated that "the objective medical evidence of record does indicate that [Plaintiff] has orthopedic problems with his right shoulder and has undergone two surgeries, but both cortisone injections and physical therapy have improved his pain and overall functioning." Tr. at 21-22. As for Plaintiff's testimony regarding daily activities, the ALJ noted that Plaintiff "grocery shops, feeds himself, and drives occasionally." Tr. at 22.

Plaintiff's argument regarding the ALJ's treatment of the ME's opinion is unpersuasive. The RFC assessment must include a discussion in which the ALJ "explain[s] how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996). The determination "is within the authority of the ALJ and the assessment should be based upon all of the relevant evidence of a claimant's remaining ability to do work despite [his] impairments." Beech v. Apfel, 100 F. Supp.2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546, Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  Here, the ALJ

---

[4] The ALJ refers to the date of exam as September 19, 2011, see Tr. at 20, but it appears that Plaintiff was seen September 13, 2011. See Tr. at 529-32 (neurology clinic notes of Dr. Etienne).

-9-

discussed the medical evidence of record from the pertinent time frame and explained his reasons for not giving full weight to the ME's opinions regarding reaching. See Tr. at 20-22. Moreover, the ALJ was not required to defer to the opinion of a non-examining physician such as the ME. See Denomme v. Comm'r of Soc. Sec. Admin., 518 F. App'x 875, 877 (11th Cir. 2013) (citing McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir.1987)) ("The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician."); see also 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) (noting that, a claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive).

Plaintiff's argument that the ALJ erred by not discussing any medical evidence to support his RFC finding regarding Plaintiff's ability to frequently reach is equally unpersuasive. A review of the ALJ's Decision reflects that he considered and sufficiently addressed the medical evidence with respect to Plaintiff's upper extremities, including the objective medical testing and medical opinions. See Tr. at 20-22. Simply having a problem or impairment, such as the current problems Plaintiff has in his right shoulder and the prior problems with his left shoulder, does not automatically translate into work-related functions that an ALJ must include in an RFC. See Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (stating that "the mere existence of [some] impairments does not reveal the extent to which they limit [a plaintiff's] ability to work"); McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) (recognizing that the severity of an impairment "must be measured in terms

of its effect upon [a claimant's] ability to work").[5]

Plaintiff cites to the testimony of the ME, the October 2008 State Agency evaluation, and an October 2011 State Agency evaluation in arguing that the ALJ's RFC assessment contradicts the medical evidence. Pl.'s Mem. at 7-8. The ME's testimony and the ALJ's reasons for discounting same are discussed above. As for Plaintiff's citation to the October 2008 evaluation (ten months prior to his onset date), see Tr. at 308-15, his reliance on those earlier medical records is misplaced because that evidence pre-dates the relevant period. See Jones v. Astrue, No. 5:09-cv-387 (MTT), 2010 WL 4682813, at *5 (M.D. Ga. July 29, 2010) ("As to the medical opinions of Dr. Bramlett, it appears that the records submitted do not relate to the relevant time period, as they are all dated prior to Claimant's onset date of January 1, 2005. The ALJ, therefore, could not have erred in failing to address Dr. Bramlett's opinions."). Regarding the October 2011 evaluation, a review of the report reveals the doctor did further explain the manipulative limitations related to the right and left upper extremity, opining that, "[o]verall, [Plaintiff] may perform reaching functions frequently." Tr. at 141. Thus, Plaintiff fails to direct the court to any medical evidence that supports limitations greater than those assessed by the ALJ's RFC determination.

That the ALJ did not specifically address every piece of evidence or every finding made by every physician does not carry the day, because "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision . . . ." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). A review of the ALJ's Decision reflects that he sufficiently summarized and considered the medical evidence and opinions in the record

---

[5] Additionally, as noted by Defendant, Plaintiff does not challenge the ALJ's finding at step two of the sequential evaluation, 20 C.F.R. § 416.920(a)(4)(ii), that the only "severe" shoulder impairment is related to the Plaintiff's right shoulder. Def.'s Mem. at 6; see also Tr. at 17 (ALJ's Decision-Finding 2).

regarding Plaintiff's ability for reaching for the undersigned to find that his Decision in this regard is supported by substantial evidence.

### B.  VE Hypothetical (issue two)

Plaintiff challenges the hypothetical posed to the VE because the hypothetical, according to Plaintiff, failed to include a limitation for "occasional" reaching as opined by the ME. Pl.'s Mem. at 7-8; see Tr. at 42. Specifically, Plaintiff argues that the VE indicated there were no jobs available in the unskilled category of work if Plaintiff were restricted to occasional reaching and restricted to limited contact with the public. Pl.'s Mem. at 7; see Tr. at 89-90. Defendant responds that there was no error because the ALJ's hypothetical to the VE included all credible limitations supported by the record. Def.'s Mem. at 9.

"[F]or a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227 (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)); see also Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (citation omitted). Pertinent to Plaintiff's argument, the ALJ included the following limitation in the hypothetical posed to the VE: "With regard to manipulative limitations, in terms of reaching in all directions, handling, fingering, and feeling, he is totally precluded from reaching overhead or working overhead. Reaching in all other directions, such as in front of him or laterally, can be done on a frequent basis." Tr. at 85. As discussed in the section above, the ALJ's RFC assessment regarding Plaintiff's ability to reach was supported by substantial evidence. Thus, when the ultimate RFC that is adopted by the ALJ substantially conforms to the hypothetical presented to the VE as was the case here, compare Tr. at 18-19, with Tr. at 84-85, the VE's testimony also constitutes substantial evidence. See Wilson, 284 F.3d at 1227 (citations omitted).

-12-

After determining the Plaintiff's RFC, the ALJ noted that Plaintiff had no past relevant work. Tr. at 23 (ALJ Decision-Finding 5). The ALJ then properly proceeded to step five of the sequential evaluation process. Based upon the hypothetical posed, the VE testified that there were several examples of unskilled light and sedentary jobs available in the national economy that Plaintiff could perform, Tr. at 86, so the ALJ's step five finding in this regard is supported by substantial evidence. Wilson, 284 F.3d at 1227.

For the foregoing reasons, the undersigned finds no error in the ALJ's hypothetical to the VE.

### V. Conclusion

After due consideration, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on February 8, 2016.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

jde
Copies to:
Counsel of record